```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF MISSISSIPPI
                         NORTHERN DIVISION
```

MARIE RHODES CHIPLEY, INDIVIDUALLY,                           PLAINTIFFS
AS ADMINISTRATRIX OF ESTATE OF
MICHAEL RHODES, AND AS PERSONAL REPRESENTATIVE
OF MICHAEL WILLIAM RHODES, DECEASED, AND
MICHAEL ELLIS RHODES, INDIVIDUALLY

VS.                                      CIVIL ACTION NO. 3:16CV901TSL-RHW

SERGEANT SHARKEY BROWNLOW                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Sharkey Brownlow to exclude opinions by plaintiffs' expert Lindsay Hayes. Plaintiffs Marie Rhodes Chipley, individually, as administratrix of the estate of Michael Rhodes, and as personal representative of Michael William Rhodes, deceased, and Michael Ellis Rhodes, individually, have responded in opposition to the motion. The court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted.

Plaintiffs filed this action under 42 U.S.C. § 1983 seeking to recover damages on account of the death of their father, Michael Rhodes, who committed suicide hours after being taken into custody and held in the Yazoo County Regional Correctional Facility (YCRFG or jail). Plaintiffs originally named as defendants Yazoo County, the sheriff and various jail officials/employees. Some of those defendants have been

voluntarily dismissed and others have been dismissed by the court. The sole remaining defendant is Sergeant Sharkey Brownlow. Plaintiffs allege that Brownlow, a jailer at the facility, was deliberately indifferent to Rhodes' Fourteenth Amendment right to protection from self-harm and that Brownlow's deliberate indifference was a proximate cause of their father's death.[1]

To prove their claim against Brownlow for violation of this right, plaintiffs must prove "(1) that [Brownlow] had subjective knowledge of a substantial and serious risk that [Mr. Rhodes] might commit suicide; and (2) that [Brownlow] nevertheless disregarded the risk of suicide by responding to it with deliberate indifference." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)) (prison official must have "actual knowledge of the substantial risk of suicide" and respond to that risk with deliberate indifference). The court has previously addressed the subjective knowledge requirement, stating:

> The "subjective knowledge" prong "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S.Ct. 1970 (citations omitted); Hope v. Pelzer, 536 U.S. 730, 738, 122 S. Ct. 2508, 2514, 153 L. Ed. 2d 666 (2002) (court "may infer the existence of this subjective state of

---

[1] See Flores v. County of Hardeman, 124 F.3d 736, 738 (5th Cir. 1997) ("A pretrial detainee has a clearly established right under the Due Process Clause of the Fourteenth Amendment to be protected from known suicidal tendencies.").

2

> mind from the fact that the risk of harm is obvious")
> (citing <u>Farmer</u>, 511 U.S. at 842, 114 S. Ct. 1970);
> <u>Hinojosa</u>, 807 F.3d at 665 (quoting <u>Farmer</u>). "[T]o avoid
> liability, '[p]rison officials charged with deliberate
> indifference might show ... that they did not know of
> the underlying facts indicating a sufficiently
> substantial danger and that they were therefore unaware
> of a danger, or that they knew the underlying facts but
> believed (albeit unsoundly) that the risk to which the
> facts gave rise was insubstantial or nonexistent.'"
> <u>Hyatt v. Thomas</u>, 843 F.3d 172, 177 (5th Cir. 2016)
> (quoting <u>Farmer v. Brennan</u>, 511 U.S. at 844, 114 S. Ct.
> 1970); <u>see</u> <u>also</u> <u>Farmer</u>, 511 U.S. at 838, 114 S. Ct. 1970
> ("an official's failure to alleviate a significant risk
> that he should have perceived but did not, while no
> cause for commendation, cannot under our cases be
> condemned as the infliction of punishment.").

<u>Chipley v. Yazoo Cty., Miss.</u>, No. 3:16CV901TSL-RHW, 2018 WL 1903202, at *4 (S.D. Miss. Apr. 20, 2018).

To establish their claim, it is not enough for plaintiffs to prove that Brownlow should or would have known Rhodes presented a suicide risk; actual knowledge is required. The primary issue in dispute in this case is whether Brownlow, in fact, had such knowledge. Plaintiffs allege that Brownlow knew Rhodes was at risk of suicide; Brownlow maintains he did not. Lindsay Hayes, who has been designated by plaintiffs as an expert in suicide prevention, jail standards and correctional practices, has weighed in on the issue in his expert report, offering as his opinion that

> Michael Rhodes was identified as a suicide risk [by
> Deputy Simon Stubblefield of the Yazoo County Sheriff's
> Department] and *such information was relayed from
> [Deputy Stubblefield] to Sergeant Sharkey Brownlow* at
> the Yazoo County Regional Correctional Facility.
> *Despite having knowledge of this suicide risk, Sergeant
> Brownlow ignored the risk*, failed to place Mr. Rhodes on

3

> suicide precautions, failed to remove dangerous items
> from his cell, failed to observe Mr. Rhodes on a
> constant/continuous observation as required by policy,
> failed to screen Mr. Rhodes, and failed to initiate a
> referral for further assessment of Mr. Rhodes by medical
> and/or mental health personnel. A reasonable officer
> would not have acted in this manner. The actions and
> inactions of Sergeant Brownlow were not only egregious,
> but the proximate causes of Mr. Rhodes' suicide on
> December 24, 2014. (Emphasis added)

Hayes' conclusion that Brownlow had knowledge that Rhodes was a suicide risk is based, implicitly and/or explicitly, on Hayes' own assessment of the relative credibility of Deputy Stubblefield and Marie Rhodes Chipley, on the one hand, and Brownlow on the other. This is clear from Hayes' explanation of the basis for his conclusions. For example, Hayes explicitly credits testimony by Deputy Stubblefield that when he first arrived at the jail with Rhodes, he not only told Brownlow that immediately prior to his arrest, Rhodes had been sitting in his truck with a gun to his head threatening to kill himself, but he also told Brownlow to place Rhodes on suicide precautions. Hayes further credits Stubblefield's testimony that Rhodes, although intoxicated, was communicative and cooperative when they arrived at the jail. Hayes accepts Stubblefield's testimony as true, notwithstanding that Brownlow has given contrary testimony. Specifically, Brownlow has testified that Rhodes was intoxicated and unresponsive when he arrived at the jail and during the booking process; that Stubblefield did not mention that Rhodes was

4

suicidal or needed to be placed on suicide watch until after Brownlow and Stubblefield had already put Rhodes in a segregation cell (rather than a suicide cell); and that even then, Stubblefield said this jokingly or sarcastically. Brownlow has claimed that given Stubblefield's joking manner, he did not take seriously Stubblefield's statement that Rhodes needed to be on suicide watch. While Hayes purports to acknowledge that "the veracity of Sergeant Brownlow's testimony will obviously need to be resolved" by a jury, he offers his view that Brownlow's testimony on these matters is "dubious" and "contrary to other known facts of this case", and goes on to explain, in detail, why he doubts Brownlow's testimony on these (and other) matters and why he has thus concluded that Brownlow, in fact, knew Rhodes was suicidal.[2] None of this is proper expert testimony for at least two reasons. First, where the focus is on subjective knowledge, expert testimony cannot establish what the defendant actually knew; rather, "expert testimony is only probative of what

---

[2] Hayes does not assert that Mr. Rhodes' risk of suicide was obvious based solely on his demeanor following his arrival at the jail. Hayes does state that "in addition to the obvious suicidal behavior displayed at the scene of the arrest, Mr. Rhodes also displayed other behavior associated with an increased risk for suicide such as crying and intoxication." However, Brownlow was not present at the scene of the arrest or during transport, when Rhodes was reportedly agitated and crying. By all accounts, Rhodes was intoxicated when he arrived at the jail; but a risk of suicide would not be obvious merely from intoxication. Thus, for Brownlow to have had knowledge that Rhodes was a suicide risk, that knowledge would have come from Deputy Stubblefield and/or Marie Rhodes Chipley.

5

inferences [the defendant], himself, could have made; whether he should have made the connection is irrelevant to this analysis." Gobert v. Caldwell, 463 F.3d 339, 348 n.29 (5th Cir. 2006).[3]

Second, Hayes' opinion as to what Brownlow knew is based on his assessment of the credibility of the witnesses. It is well-settled that "[d]etermining the weight and credibility of the evidence is within the sole province of the jury." United States v. Martinez, 975 F.2d 159, 161 (5th Cir. 1992). "[E]xpert testimony may not usurp the jury's authority to make credibility determinations." Charalambopoulos v. Grammer, No. 3:14-CV-2424-D, 2017 WL 930819, at *17 (N.D. Tex. Mar. 8, 2017) (citations omitted). See also Skidmore v. Precision Printing & Pkg., Inc., 188 F.3d 606, 618 (5th Cir. 1999) (stating that "[c]redibility determinations, of course, fall within the jury's province" in relation to a challenge to expert testimony); Amin-Akbari v. City of Austin, Tex., 52 F. Supp. 3d 830, 848 (W.D. Tex. 2014) (stating that expert's opinion as to which witnesses should be believed was not helpful to the trier of fact as "it is the province of the jury to evaluate the credibility and weigh the (occasionally

---

[3] The Supreme Court has held that Federal Rule of Evidence 702, which governs the admissibility of expert testimony, imposes on the trial judge a special gatekeeping obligation to ensure that only expert testimony that is relevant and reliable be admitted. Kumho Tire Co. V. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238 (1999) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). Evidence is relevant if it is helpful to the trier of fact.

conflicting) evidence"); McBroom v. Payne, No. 1:06CV1222-LG-JMR, 2011 WL 1356925, at *3 (S.D. Miss. Apr. 11, 2011), aff'd, 478 F. App'x 196 (5th Cir. 2012) (stating that "[w]hether a witness is to be believed by the jury or not is beyond the competency of any witness. It does not take an expert to determine motivations in telling or not telling the truth....") (internal quotation marks and citation omitted).

That is not to say experts are precluded from testifying when facts are in dispute. On the contrary,

> [e]xperts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence. ... That does not mean that the expert has made impermissible credibility determinations that preclude him from testifying. If an expert could not base his opinion on assumptions-which in turn are based on testimony-there could be little meaningful and informative expert testimony in any case in which there was a divergence of testimony. The question is not whether the opinion is based on assumptions, but whether there is some factual support for them. If there is not, they are by hypothesis unreliable and inadmissible. Cf., [Buscaglia v. United States, 25 F.3d 530, 533 (7th Cir. 1994)] (expert testimony inadmissable if based on unsupported assumptions). If there is, it is for the jury, properly instructed, to determine the credibility of the witnesses and thus the weight to be given to the expert opinion.

Richman v. Sheahan, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006). See also Pipitone v. Biomatrix, Inc., 288 F.3d 239, 250 (5th Cir. 2002) (stating, "[T]he fact-finder is entitled to hear [an expert's] testimony and decide whether it should accept or reject that testimony after considering all factors that weigh

on credibility, including whether the predicate facts on which [the expert] relied are accurate."); Carr v. Montgomery Cty., Tex., No. CIV.A. H-13-2795, 2015 WL 5838862, at *6 (S.D. Tex. Oct. 7, 2015) (declining to exclude plaintiff's expert's testimony on ground that he relied more heavily on plaintiff's version of the facts, and observing that "[d]efendants can cross examine [the expert] at trial regarding whether the factual basis for his opinions is complete and accurate...."); Upchurch v. Harcharik, No. 3:11CV252 DPJ-FKB, 2013 WL 12092261, at *2 (S.D. Miss. Dec. 2, 2013) (overruling challenge to defense expert's opinions as "one-sided" and improper credibility assessment, and explaining that while the expert "obviously cannot opine as to a witness's credibility or speculate as to [plaintiff's] state of mind, ... he can lay the factual foundation upon which he based his opinions. Plaintiffs' disagreement with that predicate goes to weight and is subject to cross examination."); Fontenot v. Safety Council of Sw. La., No. 2:16-CV-84, 2017 WL 3588200, at *6 (W.D. La. Aug. 16, 2017) ("When facts are in dispute, the fact-finder is entitled to hear an expert's testimony and decide what weight, if any, to accord it, which includes a consideration of whether the facts on which the expert relied are accurate."). That said,

> "[t]here is a critical distinction between an expert testifying that a disputed fact actually occurred or

> that one witness is more credible than another and an
> expert giving an opinion based upon factual
> assumptions, the validity of which are for the jury
> to determine. The former is manifestly improper, the
> latter is not." Richman v. Sheahan, 415 F. Supp. 2d
> 929, 942 (N.D. Ill. 2006). Thus, an expert may
> testify to opinions where her opinion is based on
> facts, the truth of which she would or could not
> testify to.

Thomas v. Barze, 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014). This means, for example, that an expert could properly testify to his opinion about whether a certain action by the defendant in a certain circumstance, assuming that those are the facts, would be inconsistent with applicable policies or standards. See id. However, for the expert to not only base his opinion on an assumption that his client's version of the events is true, but to actually adopt and endorse that version of the events "would be improper usurpation of the jury's role." Id. (citing United States v. Whitted, 11 F.3d 782, 785-86 (8th Cir. 1993) (expert's "opinion that sexual abuse has in fact occurred" is not ordinarily admissible, nor can an expert "pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility")). See also United Healthcare Of Wisconsin Inc. v. See, No. 09-C-0094, 2012 WL 4516704, at *2 (E.D. Wis. Sept. 30, 2012) (distinguishing between expert who assumes one party's version of the facts is true and gives opinion on that version of the facts and one who "has analyzed all of the

9

witness statements and would present an understanding of all of the underlying facts" and "[tells] the jury which facts to believe or [testifies] as to [a witness's] credibility").

In the case at bar, regarding Brownlow's knowledge, Hayes has not merely assumed or accepted the plaintiffs' version of the facts as a predicate for his opinions. On the contrary, as Hayes clearly explains in his report, he has "reviewed and analyzed" the evidence, much of it conflicting, and "determined the facts upon which to rely." In so doing, he has accepted the testimony of Deputy Stubblefield and rejected as "dubious" and "contrary to other evidence" Brownlow's testimony that he did not know/think Rhodes was suicidal[4]; and based on the version of the facts he has found most credible, Hayes gives his opinion that Brownlow knew Rhodes was a suicide risk.

Plaintiffs assert that Hayes' opinions on these matters is proper as he "helps the jury compare and contrast voluminous facts for them to digest and understand, and by the same token helps to sort through the various conflicting statements of

---

[4] Hayes references in his report testimony by Marie Chipley that she spoke to Brownlow by phone on the evening of her father's arrest and told him of her father's earlier suicide threat and expressed her concern that he might try to harm himself. Hayes does not specifically comment on her credibility or identify her testimony as a basis for his conclusion that Brownlow was aware that Rhodes was suicidal. Testimony to that effect would be inadmissible as an impermissible credibility assessment. Brownlow has admitted that Chipley called and expressed concern about her father's drinking but has denied she said anything to suggest that Rhodes was suicidal.

10

Brownlow" and "provides helpful descriptions of the contradicting statements, which are necessary facts or data for any expert opinion in this regard." There is no question, however, but that Hayes has made credibility assessments to arrive at his proposed opinion that Brownlow knew Rhodes presented a suicide risk. His proposed opinion thus invades the province of the jury to make credibility determinations. His further opinion that Brownlow ignored Rhodes' risk of suicide is necessarily grounded on his initial conclusion that Brownlow knew of the risk of suicide and thus is inextricably interwined with his credibility determinations. Cf. Jordan v. City of Chicago, No. 08 C 6902, 2012 WL 88158, at *6 (N.D. Ill. Jan. 11, 2012) (striking expert's testimony in its entirety where "[i]t [was] simply not feasible to extract non-credibility opinions from the credibility opinions in [the expert's] report given that the entire report [was] premised on his evaluation of which witnesses [were] believable."). For these reasons, Hayes will not be permitted to offer any opinion on the credibility of any witness or to testify that Brownlow knew Rhodes was a suicide risk or that he ignored that risk and thereby proximately caused Rhodes' suicide.[5]

---

[5] Hayes would not be permitted to offer an opinion on proximate causation in any event as that is a legal conclusion and experts are not permitted to give legal conclusions. See Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) (stating that "allowing an expert to give his opinion on the legal conclusions

11

Hayes further opines in his report that

> based upon all the available facts in this case, as well as various statements from Sergeant Brownlow, there is overwhelming evidence to indicate that Mr. Rhodes was *not* observed at 30-minute intervals as required [by the County's policy on suicide prevention]. Mr. Rhodes was placed in a segregation cell by Sergeant Brownlow and Deputy Stubblefield at approximately 8:41pm on December 23, observed by Sergeant Brownlow three (3) or four (4) hours later at approximately 11:41 pm (or 12:34 am), and left unobserved by Sergeant Brownlow for approximately five (5) or six (6) hours until found hanging at approximately 5:29am on December 24, 2014.

It is undisputed that the policy in place at the jail at the time of Rhodes' suicide required that inmates in segregation be observed every thirty minutes, and it is also undisputed that Brownlow did not comply with this policy. Indeed, Brownlow has never claimed that he observed Rhodes at the required thirty-minute intervals. Expert opinion that purports to establish facts which are already undisputed is neither necessary nor helpful to the jury.

Hayes' opinion that Brownlow checked on Rhodes only once from the time he placed him in the segregation cell until he found Rhodes hanged in his cell and that Brownlow left Rhodes

---

to be drawn from the evidence both invades the court's province and is irrelevant."); Briley v. Wal-Mart Stores, Inc., No. 2:15-CV-439, 2018 WL 276368, at *8 (S.D. Tex. Jan. 3, 2018) (expert's proposed testimony regarding proximate cause of accident "improperly opines on the legal, not a factual, cause of the accident") (internal quotation marks and citation omitted).

unobserved for five to six hours is based on Hayes' own assessment as to which, if any, of several inconsistent statements/testimony by Brownlow as to how often and when he checked on Rhodes is to be believed.[6] Plaintiffs submit that as to these matters, Hayes has not made credibility assessments but rather "factual assessments of the evidence". Even if this were an accurate characterization of Hayes' report,

> expert witnesses are not allowed to sort out possible conflicting testimony or to argue the implication of those inconsistencies. That is the role of the lawyer, and it is for the jury to draw its own conclusions from the testimony it hears. It is simply not [the expert's] place to point out inconsistencies [in the evidence] as he seeks to do here, and his evaluation of claimed inconsistencies will not be helpful to the jury.

Davis v. Duran, 277 F.R.D. 362, 370 (N.D. Ill. 2011). See Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) (internal quotation marks and citation omitted) ("the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.").

---

[6] In an initial incident report, Brownlow stated he checked on Rhodes twice during the night, at 11:18 p.m. and 12:45 a.m.; in a later affidavit, he reported having checked on Rhodes "three times ... instead of the two times I wrote about in the incident report", including one time after 3:00 a.m.; and in his later deposition, Brownlow testified he went in to check on Rhodes "approximately every hour...." These inconsistencies, coupled with Brownlow's failure to document his alleged segregation rounds and testimony from the officer who controlled access to the segregation unit that Brownlow entered the segregation unit only once, at 11:41 p.m., led Hayes to conclude that Brownlow checked on Mr. Rhodes only once and left him unobserved for five or six hours.

13

The court recognizes that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). However, it is this court's charge, as gatekeeper, to only allow the admission of expert testimony that is reliable and relevant. For the reasons set forth herein, the court concludes that the majority of Hayes' proposed testimony relating to Brownlow should be excluded. Based on his education, training and experience, Hayes is certainly qualified and will be permitted to testify as to applicable state and/or national standards and well-established reasonable practices in the correctional facility setting relating to suicide prevention. However, he will not be permitted to offer any opinion as to what Brownlow actually knew; how often Brownlow checked on Rhodes; or the credibility of any witness, including his analysis/evaluation and/or interpretation of evidence as supporting his conclusions as to the credibility of any witness or a particular version of the facts.

In accordance wih the foregoing, it is ordered that Brownlow's motion to exclude, or in the alternative limit, Hayes' testimony, is granted to the extent set forth herein.

SO ORDERED this 25th day of April, 2019.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

14